**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TYMECO JONES, on behalf of herself and those similarly situated,<br>826 South 6th Street<br>Camden, NJ 08104<br><br>     and<br><br>IESHA BULLOCK, on behalf of herself and those similarly situated,<br>6202 Cresent Court<br>Glassboro, NJ 08028<br><br>     and<br><br>TEAIRRA PIZARRO, on behalf of herself and those similarly situated,<br>1038 N. 31st Street Apt. 8<br>Camden NJ 08105<br><br>     Plaintiffs,<br><br>     v.<br><br>SCO, SILVER CARE OPERATIONS LLC D/B/A ALARIS HEALTH AT CHERRY HILL<br>1417 Brace Road<br>Cherry Hill, NJ 08034<br><br>     and<br><br>JOHN DOES 1-10<br><br>     Defendants. | INDIVIDUAL AND COLLECTIVE ACTION FOR UNPAID OVERTIME UNDER FLSA<br><br>INDIVIDUAL AND CLASS ACTION FOR UNPAID OVERTIME AND UNPAID WAGES UNDER NEW JERSEY WAGE AND HOUR LAW AND NEW JERSEY WAGE PAYMENT LAW<br><br><br>NO: 13-cv-7910(NLH)(AMD)<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED INDIVIDUAL, COLLECTIVE, AND CLASS ACTION COMPLAINT

      Tymeco Jones, Iesha Bullock, and Teairra Pizarro (hereinafter collectively referred to as "Named Plaintiffs"), on behalf of themselves and those similarly situated, by and through undersigned counsel, hereby complain as follows against Defendants SCO, Silver Care

Operations LLC d/b/a Alaris Health at Cherry Hill and John Does 1-10 (hereinafter collectively referred to as "Defendants").

## INTRODUCTION

1.      Named Plaintiffs have initiated the instant action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law and New Jersey Wage Payment Law (hereinafter collectively "New Jersey Wage Laws"). Named Plaintiffs assert that Defendants failed to pay Named Plaintiffs and those similarly situated proper overtime compensation in violation of the FLSA and New Jersey Wage Laws.

## JURISDICTION AND VENUE

2.      The foregoing paragraphs are incorporated herein as if set forth in their entirety.

3.      This Court, in accordance with 28 U.S.C. § 1331, has original subject matter jurisdiction over Named Plaintiffs' federal claims because this civil action arises under laws of the United States, the FLSA, 29 U.S.C. § 201 *et seq*.  This Court has supplemental jurisdiction over related state law claims because they arise out of the same circumstance and are based upon a common nucleus of operative fact.

4.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

5.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of this judicial district.

## PARTIES

6.      The foregoing paragraphs are incorporated herein as if set forth in full.

7.      Named Plaintiff Tymeco Jones (hereinafter "Named Plaintiff Jones") is an adult individual with an address as set forth above.

8.      Named Plaintiff Iesha Bullock (hereinafter "Named Plaintiff Bullock") is an adult individual with an address as set forth above.

9.      Named Plaintiff Teairra Pizarro (hereinafter "Named Plaintiff Pizarro") is an adult individual with an address as set forth above.

10.     Defendant SCO, Silver Care Operations LLC d/b/a Alaris Health at Cherry Hill is an entity operating a nursing home and engaging in commerce at an address as set forth in the caption.

11.     Defendants John Doe 1 through John Doe 5 are presently unknown persons who, directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendants which resulted in Defendants' failing to pay Named Plaintiffs and those similarly situated proper compensation pursuant to the FLSA.

12.     Defendants John Doe 6 through John Doe 10 are presently unknown persons who had control over processing payroll for Named Plaintiffs and those similarly situated.

13.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14.     Named Plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons

presently and formerly employed as hourly employees of Defendants who work or worked for Defendants as "Certified Nursing Assistants" and/or in similar non-exempt positions with similar duties, and who are or were subject to Defendants' unlawful pay practices and policies (the members of this putative class are referred to as "Class Plaintiffs").

15. This putative class includes a sub-class, "Night Shift Plaintiffs", consisting of all Class Plaintiffs who have worked the night shift for Defendants.

16. Named Plaintiffs' claims are typical of the claims of the Class Plaintiffs, because Named Plaintiffs, like all Class Plaintiffs, were employees of Defendants within the last three years whom Defendants required to work more than 40 hours per workweek and then failed to properly pay overtime wages as required by the Fair Labor Standards Act ("FLSA").

17. There are numerous similarly situated current and former employees of Defendants who were compensated improperly for overtime work in violation of the FLSA and who would benefit from the issuance of a Court Supervised Notice of the instant lawsuit and the opportunity to join in the present lawsuit.

18. Similarly situated employees are known to Defendants, are readily identifiable by Defendants, and can be located through Defendants' records. Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

19. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

20. Named Plaintiffs brings their claims asserting violations of the New Jersey Wage Laws as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of

themselves and on behalf of all persons presently and formerly employed by Defendants as "Certified Nursing Assistants" and/or in similar positions with similar non-exempt duties, and who were subject to Defendants' unlawful pay practices and policies at any point in the three years preceding the date the instant action was initiated (the members of this putative class are also referred to as "Class Plaintiffs").

21.     This putative class includes a sub-class, "Night Shift Plaintiffs", consisting of all Class Plaintiffs who have worked during the night shift for Defendants.

22.     The class is so numerous that the joinder of all class members is impracticable. Named Plaintiffs do not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is estimated to be at least forty (40) employees.

23.     Named Plaintiffs' claims are typical of the claims of the putative class members, because Named Plaintiffs, like all Class Plaintiffs, were subject to the same unlawful wage policies and practices of Defendants.

24.     Named Plaintiffs will fairly and adequately protect the interests of the putative class because Named Plaintiffs' interests are coincident with, and not antagonistic to, those of the class.  Named Plaintiffs have retained counsel with substantial experience in the prosecution of class claims involving employee wage disputes.

25.     Defendants have acted and refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole insofar as Defendants have applied consistent unlawful wage policies to the entire class and have refused to end these policies.

26.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action. The class will be easily identifiable from Defendants' records.

27.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously. Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants. Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendants.

28.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class. Among the questions of law and fact that are common to the class are (1) whether Defendants failed to pay proper overtime to Class Plaintiffs for hours worked in excess of 40 per workweek; and (2) whether Defendants had any good faith basis to conclude that their failure to pay Class Plaintiffs at least 1.5 times their regular rate for hours over 40 was legal.

## FACTUAL BACKGROUND

29.     The foregoing paragraphs are incorporated herein as if set forth in full.

30.     In or around 2003, Defendants hired Named Plaintiff Jones as a certified nursing assistant ("CNA").

31.     In or around March 2006, Defendants hired Named Plaintiff Bullock as a CNA.

32.     In or around July 2009, Defendants hired Named Plaintiff Pizarro as a CNA.

33.     Named Plaintiffs continue to work for Defendants and perform patient care services.

34.     Class Plaintiffs perform/performed patient care services for Defendants.

35.     Named Plaintiffs regularly work for Defendants in excess of 40 hours per workweek.

36.     Class Plaintiffs regularly work/worked for Defendants in excess of 40 hours per workweek.

37.     Named Plaintiffs do not have the authority to hire or fire other employees of Defendants.

38.     Class Plaintiffs do/did not have the authority to hire or fire other employees of Defendants.

39.     Named Plaintiffs do not have the authority to schedule employees of Defendants.

40.     Class Plaintiffs do/did not have the authority to schedule employees of Defendants.

41.     At all times relevant herein, Defendants considered Named Plaintiffs as non-exempt employees entitled to overtime compensation as required by the FLSA and the New Jersey Wage laws.

42.     Accordingly, at all times relevant herein Named Plaintiffs were non-exempt employees entitled to overtime compensation as required by the FLSA and the New Jersey Wage laws.

43.     At all times relevant herein, Defendants considered Class Plaintiffs as non-exempt employees entitled to overtime compensation as required by the FLSA and the New Jersey Wage laws.

44.     Accordingly, at all times relevant herein Class Plaintiffs as non-exempt employees entitled to overtime compensation as required by the FLSA and the New Jersey Wage laws.

## UNLAWFUL OVERTIME RATES

45.     Named Plaintiff Jones earns a base hourly rate of $12.70 per hour.

46.     In addition to her base hourly rate, Defendants pay Named Plaintiff Jones a variety of hourly premiums or shift differentials depending on the different shifts Named Plaintiff Jones works.

47.     The different differentials Defendants pay Named Plaintiff Jones include a differential of $3.00 per hour (called "Differential" on her paystub), a differential of $1.25 per hour (called "Raise Diff" on her paystub), and a differential of $1.00 per hour (called "Frills" on her paystub).

48.     Accordingly, Defendants do not pay Named Plaintiff Jones any shift differential that exceeds 1.5 times her base rate.

49.     Furthermore, Defendants do not pay Named Plaintiff Jones any shift differentials that have the purpose of compensating her for hours worked in excess of eight (8) in a day or in excess of 40 hours in a workweek.

50.     Named Plaintiff Bulluck earns a base hourly rate of $11.25 per hour.

51.     In addition to her base hourly rate, Defendants pay Named Plaintiff Bulluck a variety of hourly premiums or shift differentials depending on the different shifts Named Plaintiff Bulluck works.

52.     The different differentials Defendants pay Named Plaintiff Bulluck include a differential of $3.00 per hour (called "Differential" on her paystub), a differential of $2.50 per

hour (also called "Differential" on her paystub), a differential of $1.25 per hour (called "Raise Diff" on her paystub), and a differential of $1.00 per hour (called "Frills" on her paystub).

53.     Accordingly, Defendants do not pay Named Plaintiff Bulluck any shift differential that exceeds 1.5 times her base hourly rate.

54.     Furthermore, Defendants do not pay Named Plaintiff Bulluck any shift differentials that have the purpose of compensating her for hours worked in excess of eight (8) in a day or in excess of 40 hours in a workweek.

55.     Named Plaintiff Pizarro earns a base rate of $10.87 per hour.

56.     In addition to her base hourly rate, Defendants pay Named Plaintiff Pizarro a variety of hourly premiums or shift differentials depending on the different shifts Named Plaintiff Pizarro works.

57.     The different differentials Defendants pay Named Plaintiff Pizarro include a differential of $3.00 per hour (called "Differential" on her paystub), a differential of $1.25 per hour (called "Raise Diff" on her paystub), and a differential of $1.60 per hour (called "Frills" on her paystub).

58.     Accordingly, Defendants do not pay Named Plaintiff Pizarro any shift differential that exceeds 1.5 times her base hourly rate.

59.     Furthermore, Defendants do not pay Named Plaintiff Pizarro any shift differentials that have the purpose of compensating her for hours worked in excess of eight (8) in a day or in excess of 40 hours in a workweek.

60.     In addition to their base hourly rate, Defendants pay/paid Class Plaintiffs a variety of hourly premiums or shift differentials depending on the different shifts Class Plaintiffs work/worked.

61.    Defendants label/labeled these different shift differentials as "Raise Diff," "Frills," and "Differential" on Class Plaintiffs' pay stubs.

62.    Defendants do/did not pay Class Plaintiffs any shift differential that exceeds/exceeded 1.5 times their base hourly rates.

63.    Defendants do/did not pay Class Plaintiffs any shift differentials that have/had the purpose of compensating Class Plaintiffs for hours worked in excess of eight (8) in a day or in excess of 40 hours in a workweek.

64.    Defendants fail to use a "weighted average," by not applying all shift differentials, specifically those identified as "Differential" and "Raise Diff" on Named Plaintiffs' pay stubs, when determining Named Plaintiffs' regular rate, upon which their overtime rate is based.

65.    Accordingly, Defendants pay Named Plaintiffs less than 1.5 their regular rate for hours that Named Plaintiffs work in excess of 40 hours per workweek.

66.    Defendants fail/failed to use a "weighted average." by not applying all shift differentials, specifically those identified as "Differential" and "Raise Diff" on Class Plaintiffs' pay stubs, when determining Class Plaintiffs' regular rate, upon which their overtime rate is/was based.

67.    Accordingly, Defendants pay/paid Class Plaintiffs less than 1.5 their regular rate for hours that Named Plaintiffs work in excess of 40 hours per workweek.

68.    By way of example only, during Named Plaintiff Bulluck's 2-week pay period of June 23, 2013 to July 6, 2013 (A true and correct copy of Named Plaintiff Bulluck's paystub for the pay period of June 23, 2013 to July 6, 2013 is attached and incorporated herein as **Exhibit A**):

     a.   Named Plaintiff Bulluck worked 40 regular hours and 3.75 overtime hours.

b. Hence, Named Plaintiff Bulluck worked 43.75 hours during one workweek and 0 hours during the other workweek.

c. Defendants paid Named Plaintiff Bulluck her base hourly rate of $11.25 for each hour she worked ($11.25 * 43.75 hours = $492.19).

d. Defendants paid Named Plaintiff Bulluck an overtime premium of $5.63 per hour ($11.25 / 2) for each overtime hour she worked ($5.625 * 3.75 hours = $21.09).

e. Defendant paid Named Plaintiff Bulluck a "Raise Diff" of $1.25 for 7.5 hours worked ($1.25 * 7.5 hours = $9.38).

f. Defendant paid Named Plaintiff Bulluck a "Differential" of $2.50 per hour for 7.5 hours worked ($2.50 * 7.5 hours = $18.75).

g. However, despite earning said differentials during a workweek wherein Named Plaintiff Bulluck worked in excess of 40 hours, Defendant failed to apply same when calculating her regular rate for the purpose of paying her overtime wages.

h. In calculating Named Plaintiff Bulluck's correct regular rate, Defendants should have used a weighted average by adding together all remuneration Named Plaintiff Bulluck earned during the workweek ($492.19 + $9.38 + $18.75 = $520.32) and then dividing the total amount by the total number of hours worked ($520.32 / 43.75 = $11.89).

i. Accordingly, Named Plaintiff Bulluck's correct regular rate for this week was $11.89 per hour and not $11.25.

j. Defendants should have paid her an overtime premium of $5.945 per hour ($11.89 / 2) instead of $5.63 per hour and therefore a total of $22.29 in overtime wages ($11.89 8 3.75 hours).

k.  Due to Defendants' failure to pay Named Plaintiff Bulluck proper overtime, Named Plaintiff Bulluck was shorted $1.20 ($22.29 - $21.09) during this pay period.

69.  By way of further example, during Named Plaintiff Jones' 2-week pay period of January 20, 2013 to February 2, 2013 (A true and correct copy of Named Plaintiff Jones' paystub for the pay period of January 20, 2013 to February 2, 2013 is attached and incorporated herein as **Exhibit B**):

a.  Named Plaintiff Jones worked 62.5 regular hours and 12.75 overtime hours.

b.  Hence, while Named Plaintiff Jones does not know, without discovery, the specific number of hours that she worked in each week of the 2-week pay period, she apparently worked 52.75 hours one workweek (40 regular + 12.75 overtime hours) and 22.5 hours the other.

c.  During this pay period, Defendants paid Named Plaintiff Jones a "Raise Diff" of $1.25 per hour for 52.5 hours.  Therefore, at a minimum at least 30 (52.5 – 22.5) of these hours *must have been worked* during the workweek wherein Named Plaintiff Jones worked overtime.

d.  During this pay period, Defendants also paid Named Plaintiff Jones a "Differential" of $3.00 per hour for 7.5 hours. Although without discovery, Named Plaintiff Jones cannot know for certain whether any of this time was worked during the workweek she worked overtime.

e.  Regardless, at a minimum, Named Plaintiff Jones received $37.50 in "Raise Diff" ($1.25 * 30 hours) during the overtime week wherein Named Plaintiff Jones worked 52.75 hours.

    f.  Had Defendants correctly applied Named Plaintiff Jones' differential pay when calculating her regular rate, the Raise Diff pay would have resulted in an increase of at least $0.71 per hour in her regular rate (($1.25 * 30 hours) / 52.75 total hours).

    g.  Accordingly, Defendants should have paid Named Plaintiff Jones at least a 50% overtime premium on the Raise Diff hourly rate for the 12.75 hours of overtime worked, resulting in a net increase in overtime owed of $4.53 (($0.71 * .5 OT premium) * 12.75 overtime hours).

    h.  Again, without discovery, Named Plaintiff Jones cannot calculate the exact amount she is owed, but it is clear from her pay records that the *least* amount that Defendants failed to pay her for this pay period as required by the FLSA and the New Jersey Wage Laws is $4.53.

70.    By way of further example, during Named Plaintiff Pizarro's 2-week pay period of April 28, 2013 to May 11, 2013 (A true and correct copy of Named Plaintiff Pizarro's paystub for the pay period of April 28, 2013 to May 11, 2013 is attached and incorporated herein as **Exhibit C**):

    a.  Named Plaintiff Pizarro worked 70 regular hours and 11.75 overtime hours.

    b.  Hence, while Named Plaintiff Pizarro does not know, without discovery, the specific number of hours that she worked in each week of the 2-week pay period, she apparently worked 51.75 hours one workweek (40 regular hours + 11.75 overtime hours) and 18.25 hours during the other workweek.

    c.  During this pay period, Defendants paid Named Plaintiff Pizarro a "Raise Diff" of $1.25 per hour for 45 hours.  Therefore, at a minimum at least 26.75 of these

hours (45 – 18.25) *must have been worked* during the workweek wherein Named Plaintiff Pizarro worked overtime.

d. During this pay period, Defendants also paid Named Plaintiff Pizarro a "Differential" of $3.00 per hour for 15 hours.  Although without discovery, Named Plaintiff Pizarro cannot know for certain whether any of this time was worked during the workweek she worked overtime.

e. Regardless, at a minimum, Named Plaintiff Pizarro received $33.44 in "Raise Diff" pay ($1.25 * 26.75 hours) during the overtime week where Named Plaintiff Pizarro worked 51.75 hours.

f. Had Defendants correctly applied Named Plaintiff Pizarro's differential pay when calculating her regular rate, the Raise Diff pay would have resulted in an increase of at least $0.65 per hour in her regular rate (($1.25 * 26.75 hours) / 51.75 total hours).

g. Accordingly, Defendants should have paid Named Plaintiff Pizarro at least a 50% overtime premium on the Raise Diff hourly rate for the 11.75 hours of overtime worked, resulting in a net increase in overtime owed of $3.82 (($0.65 * .5 OT premium) * 11.75 hours).

h. Again, without discovery, Named Plaintiff Pizarro cannot calculate the exact amount she is owed, but it is clear from her pay records that the *least* amount that Defendants failed to pay her for this pay period as required by the FLSA and New Jersey Wage Laws is $3.83.

71.     The above are merely examples of Defendants' conduct and demonstrate how same injured Named Plaintiffs during a single pay period.

72.     Defendants' conduct regularly injures/injured Named Plaintiffs and Class Plaintiffs in this way throughout their employment with Defendants.

73.     Defendants' practice of not applying all shift differentials to determine the regular rate consistently occurs/occurred in nearly all pay periods that Named Plaintiffs and Class Plaintiffs work/worked, save only the pay periods where Named Plaintiffs and Class Plaintiffs do/did not work in excess of 40 hours or where shift differentials are/were not provided.

## UNPAID MEAL BREAKS
**(Named Plaintiff Jones, Named Plaintiff Pizarro, and Night Shift Plaintiffs v. Defendants)**

74.     Named Plaintiffs and Class Plaintiffs are/were members of a union.

75.     Per the collective bargaining agreement ("CBA") between Defendants and Named Plaintiffs' and Class Plaintiffs' union, Defendants are required to provide a 30-minute unpaid meal break to individuals employed by Defendants as CNAs.  (A true and correct copy of the relevant portion of the CBA is attached and incorporated herein as **Exhibit D**)

76.     Defendants' facility at which Named Plaintiffs and Class Plaintiffs work/worked has five (5) floors.

77.     During day and evening shifts there are four (4) to six (6) CNAs assigned to each floor.

78.     During day and evening shifts, Defendants' supervisors schedule meal breaks for the CNAs scheduled to work during those shifts.

79.     During day and evening shifts, each CNA is responsible for around 12 – 17 patients depending on the number of CNAs assigned to each floor.

80.     During day and evening shifts, Defendants' supervisor schedules the meal break for each CNA.

81.     Named Plaintiff Jones and Named Plaintiff Pizarro work during the night shift.

82.     Night Shift Plaintiffs work/worked during the night shift.

83.     During night shifts, there are only two (2) CNAs assigned to each floor, and each CNA is responsible for around 30 patients.

84.     Due to the fewer number of CNAs on duty, Defendants' night shift supervisors do/did not schedule meal breaks for Named Plaintiffs Jones and Pizarro and Night Shift Plaintiffs.

85.     From in or around 2006 to in or around 2013, Defendants' Night Shift Supervisor was Shrie (Last Name Unknown) (hereinafter "Supervisor Shrie").

86.     Thereafter, Dennis (Last Name Unknown) (hereinafter "Supervisor Dennis") became Defendants' Night Shift Supervisor.

87.     During the three (3) years prior to the filing of the instant lawsuit (December 31, 2013) through the present, Defendants' Director of Nursing was and continues to be Kathleen Cassidy (hereinafter "Director Cassidy").

88.     During night shifts, Named Plaintiffs Jones and Pizarro rarely, if ever, take an uninterrupted, 30-minute meal break due to the low number of CNAs who work during the night shift.

89.     Despite Named Plaintiffs Jones' and Pizarro's inability to take uninterrupted, 30-minute meal breaks, Defendants automatically deduct 30 minutes of paid time from their pay for each night shift that they work.

90.     Accordingly, Defendants regularly dock Named Plaintiffs Jones and Pizarro for 30-minute meal breaks which they do not take, resulting in Named Plaintiffs Jones and Pizarro not being paid for all hours worked.

91.     As Named Plaintiffs Jones and Pizarro often work over 40 hours per workweek, this unpaid time results in Named Plaintiffs Jones and Pizarro being denied proper overtime compensation.

92.     Pay periods within the three (3) years prior to the filing of Named Plaintiffs' Complaint (December 31, 2010) in which Defendant failed to pay proper overtime compensation to Named Plaintiff Jones due to deductions for 30-minute meal breaks she did not take include, but are not limited to:

a.  August 7, 2011 to August 20, 2011. (A true and correct copy of Named Plaintiff Pizarro's paystub for the pay period of April 28, 2013 to May 11, 2013 is attached and incorporated herein as **Exhibit E**).

b.  December 9, 2012 to December 22, 2012. (A true and correct copy of Named Plaintiff Pizarro's paystub for the pay period of April 28, 2013 to May 11, 2013 is attached and incorporated herein as **Exhibit F**).

c.  January 6, 2013 to January 19, 2013. (A true and correct copy of Named Plaintiff Pizarro's paystub for the pay period of April 28, 2013 to May 11, 2013 is attached and incorporated herein as **Exhibit G**).

d.  January 20, 2013 to February 2, 2013.  (See **Exhibit B**)

93.     Pay periods within the three (3) years prior to the filing of Named Plaintiffs' Complaint (December 31, 2010) in which Defendants failed to pay proper overtime compensation to Named Plaintiff Pizarro due to deductions for 30-minute meal breaks she did not take include, but are not limited to:

a.  April 28, 2013 to May 11, 2013 ( See **Exhibit C**)

b.  June 9, 2013 to June 22, 2013. (A true and correct copy of Named Plaintiff Pizarro's paystub for the pay period of June 9, 2013 to June 22, 2013 is attached and incorporated herein as **Exhibit H**).

c.  July 7, 2013 to July 20, 2013.  (A true and correct copy of Named Plaintiff Pizarro's paystub for the pay period of July 7, 2013 to July 20, 2013 is attached and incorporated herein as **Exhibit I**).

d.  July 21, 2013 to August 3, 2013. (A true and correct copy of Named Plaintiff Pizarro's paystub for the pay period of July 21, 2013 to August 3, 2013 is attached and incorporated herein as **Exhibit J**).

e.  August 4, 2013 to August 17, 2013, (A true and correct copy of Named Plaintiff Pizarro's paystub for the pay period of August 4, 2013 to August 17, 2013 is attached and incorporated herein as **Exhibit K**).

f.  December 8, 2013 to December 21, 2013. (A true and correct copy of Named Plaintiff Pizarro's paystub for the pay period of December 8, 2013 to December 21, 2013 is attached and incorporated herein as **Exhibit L**).

94.  During night shifts, Night Shift Plaintiffs rarely, if ever, take/took an uninterrupted, 30-minute meal break due to the low number of CNAs who work/worked during the night shift.

95.  Despite Night Shift Plaintiffs' inability to take uninterrupted, 30-minute meal breaks, Defendants automatically deduct/deducted 30 minutes of paid time from their pay for each night shift that they work/worked.

96.     Accordingly, Defendants regularly dock/docked Night Shift Plaintiffs for 30 minute meal breaks which Night Shift Plaintiffs do/did not take, resulting in Night Shift Plaintiffs not being paid for all hours worked.

97.     As Night Shift Plaintiffs often work/worked over 40 hours per workweek, this unpaid time results/resulted in Night Shift Plaintiffs being denied proper overtime compensation.

98.     Director Cassidy, Supervisor Shrie (Last Name Unknown), and Supervisor Dennis (Last Name Unknown) all are/were aware that Named Plaintiffs Jones and Pizarro and Night Shift Plaintiffs regularly work/worked on their assigned floor with only one other CNA.

99.     Director Cassidy, Supervisor Shrie and Supervisor Dennis all are/were aware that meal breaks are/were not scheduled for Named Plaintiffs Jones and Pizarro and Night Shift Plaintiffs.

100.    Director Cassidy, Supervisor Shrie and Supervisor Dennis all are/were aware that Named Plaintiffs Jones and Pizarro and Night Shift Plaintiffs rarely if ever take/took an uninterrupted, 30-minute meal break.

101.    As a result of Defendants' aforesaid illegal actions, Named Plaintiffs and Class Plaintiffs have suffered damages.

**COUNT I**
**Violations of the Fair Labor Standards Act (FLSA)**
**(Failure to Pay Proper Overtime Compensation)**
**(Named Plaintiffs and Class Plaintiffs v. Defendants)**

102.    The foregoing paragraphs are incorporated herein as if set forth in full.

103.    At all times relevant herein, Defendants were and continue to be "employers" within the meaning of the FLSA.

104.    At all times relevant herein, Defendants are/were responsible for paying wages to Named Plaintiffs and Class Plaintiffs.

105.    At all times relevant herein, Named Plaintiffs and Class Plaintiffs are/were employed with Defendants as "employees" within the meaning of the FLSA.

106.    Under the FLSA, an employer must pay an employee at least one and one half times his or her regular rate of pay for each hour worked in excess of forty hours per workweek.

107.    Defendants' violations of the FLSA include, but are not limited to, not paying Named Plaintiffs and Class Plaintiffs at least 1.5 times their regular rate of pay for all hours worked in excess of forty per workweek as explained *supra*.

108.    Defendants' conduct in failing to properly pay Named Plaintiffs and Class Plaintiffs is/was willful and is/was not based upon any reasonable interpretation of the law.

109.    Defendants' conduct caused Named Plaintiffs and Class Plaintiffs to suffer damages.

**COUNT II**
**Violations of the Fair Labor Standards Act (FLSA)**
**(Failure to Pay Proper Overtime Compensation)**
**(Named Plaintiffs Jones and Pizarro and Night Shift Plaintiffs v. Defendants)**

110.    The foregoing paragraphs are incorporated herein as if set forth in full.

111.    Defendants' unlawful deduction of 30 minutes per shift from Named Plaintiffs Jones' and Pizarro's and Night Shift Plaintiffs' pay resulted in Defendants failing to pay them at least 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek as explained *supra*.

112.    Defendants' conduct in failing to properly pay Named Plaintiffs and Class Plaintiffs is/was willful and is/was not based upon any reasonable interpretation of the law.

113.    Defendants' conduct caused Named Plaintiffs and Class Plaintiffs to suffer damages.

**COUNT III**
**Violations of the New Jersey Wage Laws**
**(Failure to pay Overtime Compensation)**
**(Named Plaintiffs and Class Plaintiffs v. Defendants)**

114.    The foregoing paragraphs are incorporated herein as if set forth in full.

115.    At all times relevant herein, Defendants have and continue to be "employers" within the meaning of the New Jersey Wage Laws.

116.    At all times relevant herein, Defendants are/were responsible for paying wages to Named Plaintiffs and Class Plaintiffs.

117.    At all times relevant herein, Named Plaintiffs and Class Plaintiffs are/were employed with Defendants as "employees" within the meaning of the New Jersey Wage Laws.

118.    Under the New Jersey Wage Laws, an employer must pay an employee at least one and one half times his or her regular rate of pay for each hour worked in excess of forty hours per workweek.

119.    Defendants' conduct in failing to pay Named Plaintiffs and Class Plaintiffs proper overtime compensation for all hours worked beyond 40 per workweek violated the New Jersey Wage Laws.

120.    Defendants' conduct in failing to properly pay Named Plaintiffs and Class Plaintiffs is/was willful and is/was not based upon any reasonable interpretation of the law.

121.    Defendants' conduct caused Named Plaintiffs and Class Plaintiffs to suffer damages.

**COUNT IV**
**Violations of the New Jersey Wage Laws**
**(Failure to pay Overtime Compensation)**
**(Named Plaintiffs Jones and Pizarro and Night Shift Plaintiffs v. Defendants)**

122.    The foregoing paragraphs are incorporated herein as if set forth in full.

123.    Defendants' unlawful deduction of 30 minutes per shift from Named Plaintiffs Jones' and Pizarro's and Night Shift Plaintiffs' pay resulted in Defendants failing to pay them at least 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek as explained *supra*.

124.    Defendants' conduct in failing to properly pay Named Plaintiffs and Class Plaintiffs is/was willful and is/was not based upon any reasonable interpretation of the law.

125.    Defendants' conduct caused Named Plaintiffs and Class Plaintiffs to suffer damages.

**COUNT V**
**<u>Violations of the New Jersey Wage Laws</u>**
**(Failure to Pay Wages Earned)**
**(Named Plaintiffs and Class Plaintiffs v. Defendants)**

126.    The foregoing paragraphs are incorporated herein as if set forth in full.

127.    Defendants' conduct in failing to pay Named Plaintiffs and Class Plaintiffs all wages earned violated the New Jersey Wage Laws.

128.    Defendants' conduct caused Named Plaintiffs and Class Plaintiffs to suffer damages.

**WHEREFORE**, Named Plaintiffs and Class Plaintiffs pray that this Court enter an Order providing that:

A.    Defendants are to be prohibited from continuing to maintain its illegal policy, practice or custom in violation of federal and state law;

B.    Defendants are to compensate, reimburse, and make Named Plaintiffs and Class Plaintiffs whole for any and all pay and benefits they would have received had it not been for Defendants' illegal actions;

C.      Named Plaintiffs and Class Plaintiffs are to be awarded liquidated damages for Defendants' illegal actions, as provided under applicable law;

D.      Named Plaintiffs and Class Plaintiffs are to be awarded the costs and expenses of this action and reasonable legal fees as provided under applicable law;

E.      Named Plaintiffs and Class Plaintiffs are to be awarded any and all other equitable and legal relief as the Court deems appropriate.

Respectfully Submitted,

*/s/ Justin Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Matthew D. Miller, Esq.
**SWARTZ SWIDLER, LLC**
1878 Marlton Pike East, Ste. 10
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

Dated: March 3, 2014

## DEMAND TO PRESERVE EVIDENCE

1.      All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Named Plaintiffs' and Class Plaintiffs' employment, to their cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.